## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CRIM. NO. 2:06-00028** |
| **v.** | **OPINION** |
| **DOUGLAS KENNEDY,** | **HON. WILLIAM J. MARTINI** |
| **Defendant.** | |

## MEMORANDUM OPINION[1]

### I.    INTRODUCTION

On May 23, 2006, a Second Superseding Indictment was returned against Defendant Douglas Kennedy alleging eight drug and firearm related counts. After a jury trial, Kennedy was found guilty on each count. Kennedy's attorney filed a motion for a new trial motion, which the Court granted in respect to Counts I, IV, V, and VIII. Kennedy was sentenced in regard to Counts II, III, VI, and VII. Kennedy and the Government cross-appealed. The Third Circuit reversed this Court's grant of a new trial on Counts I, IV, V, and VIII, and remanded for resentencing only.

For the reasons elaborated below, Counts **VII** and **VIII** will be merged into Count **VII**; Counts **II** and **IV** will be merged into Count **II**; Count **V** will be vacated, and sentencing, probation, supervised release, fine, restitution, special assessments, etc. will be specified in a separate order.[2]

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein may be inserted. No endorsement of any provider of electronic or other resources is intended by the Court's practice of using hyperlinks.

[2] Sentencing Memorandum Letter from Joseph N. Minish, AUSA, to the Court (June 11, 2007) (seeking to impose a statutory minimum sentence on each count).

## II.     FACTUAL BACKGROUND AND PROCEDURAL POSTURE

On November 9, 2004, while Kennedy was returning home in his Lincoln Navigator, he was arrested by Drug Enforcement Agency agents. The Agents searched his residence, the Lincoln Navigator, and his other car, a Cadillac. Both cars were outside the house and, apparently, within eyeshot of one another. Tr. 52 (July 24, 2006) (statement by Government witness that Cadillac was "parked out [in] front" of the house); Tr. 53 (July 24, 2006) (statement by Government witness that the Lincoln Navigator was parked in the house's driveway). A .45 caliber gun and heroin were found in the Lincoln Navigator. Cocaine was found in his residence.[3] No contraband was found in the Cadillac. The Cadillac was transferred to the possession of a private contractor that operated a storage facility on behalf of the United States Marshal's Service, which had seized the car.

On November 23, 2005, more than a year later, an employee of the private contractor doing route maintenance found 103.9 grams of heroin and a 9 mm handgun in a secret compartment in the Cadillac. No contraband had been found in prior searches of the car by the Government. Kennedy was already incarcerated at the time these drugs were found.

The operative indictment against Kennedy, a Second Superseding Indictment ("Indictment"), was returned on May 23, 2006. It alleged eight counts including:

Count I – Conspiracy to distribute and possess with intent to distribute a controlled substance, 21 U.S.C. § 846 (in part for drugs found in Cadillac);

Count II – Possession with intent to distribute heroin, 21 U.S.C. § 841 and 18 U.S.C. § 2 (drugs found in Lincoln Navigator);

Count III – Possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c) (gun in Lincoln Navigator in furtherance of Count II);

Count IV – Possession with intent to distribute heroin, 21 U.S.C. § 841 and 18 U.S.C. § 2 (drugs in Cadillac);

Count V – Possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c) (gun in Cadillac in furtherance of Counts I and IV);

Count VI – Possession with intent to distribute cocaine base, 21 U.S.C. § 841

_____

[3] The Court is not suggesting that Kennedy had legal title to the residence or to either car, but only that he had a sufficient possessory interest in them to describe them in this fashion.

and 18 U.S.C. § 2 (cocaine base found at Residence);

Count VII – Possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (gun in Lincoln Navigator);

Count VIII – Possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (gun in Cadillac).

With regard to Count V, the second Section 924(c) count (linked to the Cadillac), the Indictment stated:

> On or about November 9, 2004, in Essex County, in the District of New Jersey, and elsewhere, defendant Douglas Kennedy did knowingly and willfully possess a firearm, namely, a loaded Fegarmy Arms Model P9R 9 millimeter caliber handgun, bearing serial number R23268, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture or substance containing heroin, a Schedule I narcotic drug controlled substance, contrary to Title 21, United States Code, Section 841(a)(1) and (b)(1)(B), in violation of Title 21, United States Code, Section 846, as charged in Count 1 of this Second Superseding Indictment [the conspiracy count], **and** the possession with intent to distribute of 100 grams or more of a mixture or substance containing heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a) and (b)(1)(B), as charged in Count Four of this Second Superseding Indictment [the Cadillac-related possession count].

Second Superseding Indictment 5 (emphasis added).

Subsequently, during trial proceedings, the Government proposed the following jury instructions in regard to Count V:

> First: With respect to Count 5, that on or about November 9, 2004, the defendant committed a drug trafficking crime for which he might be prosecuted in a court of the United States, namely the crime charged in Count 4 of the Second Superseding Indictment **and/or** from on or about October 30, 2004 through on or about November 9, 2004, the defendant knowingly and intentionally conspired with others to commit the drug trafficking crime as charged in Count 1 of the Second Superseding Indictment.
>
> Second: With respect to Count 5, that on or about November 9, 2004, the defendant knowingly possessed a firearm in furtherance of the commission of the crimes charged in Counts 1 **and/or** 4 of the Second Superseding

-3-

Indictment.

Requests to Charge of the United States No. 52 (emphasis added). The Court accepted the Government's guidance (without objection by Defendant) and gave the jury the exact charge sought by the Government.

Thereafter, on July 28, 2006, that is, following the completion of a four-day jury trial, Kennedy was found guilty on all eight counts in spite of the government's initial failure to find the contraband in the Cadillac. Afterwards, on October 24, 2006, Kennedy filed a motion for new counsel. The motion was granted and on November 15, 2007, Kennedy's new counsel filed a motion for a new trial. This Court held that Kennedy's trial counsel was ineffective for failing to challenge the admissibility of the evidence obtained from the search of the Cadillac and granted Kennedy a new trial on Counts I, IV, V, and VIII, all of which related to evidence found in the Cadillac. Kennedy was sentenced on the other four counts to 180 months imprisonment. *United States v. Kennedy*, Crim. No. 2:06-00028 (D.N.J. Aug. 21, 2008). Kennedy appealed and the Government cross-appealed. The Third Circuit reversed this Court's grant of a new trial on Counts I, IV, V, and VIII, and remanded for resentencing only. *United States v. Kennedy*, C.A. Nos. 08-3633 & 08-3859, 2009 WL 4573950 (3d Cir. Dec. 7, 2009).

## III.   STANDARD OF REVIEW

As the issues discussed below were not timely raised in trial court proceedings, this Court applies plain error review. Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention [in a timely fashion]." The decision to correct the forfeited error is within the sound discretion of the court, "and the court should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993).

Rule 52(b) applies to district court proceedings as well as proceedings in the court of appeals. *See, e.g.*, *United States ex rel. Mayberry v. Yeager*, 321 F. Supp. 199, 211 (D.N.J. 1971).

## IV.   ANALYSIS

This opinion addresses each of two issues: multiplicity and unanimity.

-4-

## A.      Multiplicity

The Double Jeopardy Clause ("DJC") of the Fifth Amendment of the Constitution provides: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Thus, the DJC:

> protects [a defendant] not only against a second trial for the same offense, but also against multiple punishments for the same offense. [T]he question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized.

*Whalen v. United States*, 445 U.S. 684, 688 (1980) (citations omitted). In other words,

> [m]ultiplicity, the charging of a single offense in different counts of an indictment, has the vice that it may lead to multiple sentences for a single violation. And even if that does not result, it may prejudice the jury against the defendant by creating the impression of more criminal activity on his part than in fact may have been present. The basic inquiry [is two-fold, and] in determining whether counts of an indictment are truly separate, and not multiplicious, [a court must determine] whether proof of one offense charged requires an additional fact that proof of the other offense does not necessitate. [Secondly, and] of central importance is whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts.

*United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978).

### 1.      Counts VII and Count VIII: the Section 922(g)(1) counts

In *United States v. Marino*, 682 F.2d 449 (3d Cir. 1982), Marino was charged and convicted on three counts of unlawful possession of firearms in violation of 18 U.S.C. § 1202(a), which at that time, provided that: "(a)ny person who has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony ... and who receives, possesses, or transports in commerce or affecting commerce ... *any* firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both." *Marino*, 682 F.2d at 452 n.1 (emphasis added). In the course of conducting a lawful search of Marino's home pursuant to a warrant, the state police found a loaded pistol in a nightstand by Marino's bed and two rifles of different types in a closet next to the bedroom. Each of the three separately charged Section 1202 counts applied to a different gun. In sum, Marino was

sentenced to three consecutive two-year sentences: a total of six years. On appeal, the Third Circuit squarely held: "We *hold*, therefore, that the simultaneous possession of two or more firearms constitutes a single offense under Section 1202." *Id*. at 455 (emphasis added). Significantly, the Third Circuit noted in a footnote that 18 U.S.C. § 922, "has been interpreted the same way." *Marino*, 682 F.2d at 455 n.7.

More recently, in *United States v. Tann*, 577 F.3d 533 (3d Cir. 2009), the Third Circuit analyzed 18 U.S.C. § 922(g)(1), the statute at issue here. Section 922(g)(1) provides:

> It shall be unlawful for any person ... who has been convicted in any court of ... a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, *any* firearm or ammunition; or to receive *any* firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1) (emphasis added). In interpreting this statute, the Third Circuit applied the principles it had announced in *Marino* and held: "the allowable unit of prosecution under § 922(g) is the incident of possession, regardless of whether a defendant possessed more than one firearm ...." *Tann*, 577 F.3d at 537. In both *Marino* and *Tann*, the Third Circuit placed heavy reliance on ambiguity with regard to the statute's use of "any," and, therefore, applied the rule of lenity. *Marino*, 682 F.2d 454-55; *Tann*, 577 F.3d at 536-37. The *Tann* court, after analyzing the facts under Rule 52(b)'s plain error standard, the standard applicable here, remanded to the district court with instructions to vacate one of the two sentences and then to resentence the defendant after merging the two 922(g)(1) convictions. *Id*. at 538.

In the instant case, Kennedy has been charged and convicted for two counts of Section 922(g)(1). Kennedy possessed two guns – one in each of two cars which were within eyeshot of one another. For the very same reasons the Third Circuit found plain error in *Tann* and exercised its discretion to grant relief, the error here is equally clear under extant law (even as it stood at the time of the first trial), the error prejudiced Defendant's substantial rights, and, as such, on these similar facts, this Court should grant relief. *Tann*, 577 F.3d at 543 (applying clear error analysis and granting discretionary relief because the imposition of merely an additional financial assessment would "seriously affect the fairness and integrity of these judicial proceedings"). As *Marino* and *Tann* squarely apply: sentence may be imposed for only one of the two multiplicitous counts and the two counts will be merged into a single conviction. The Court exercises its discretion: no sentence will be imposed for Count VIII in regard to the evidence found in the Cadillac, and Counts VII and VIII are merged into Count VII. Although the Court has no reason to question the jury's determination that the evidentiary basis for each conviction was sufficient under the

-6-

governing legal standard, the evidence found in the Cadillac was discovered more than a year after the car had been seized – unlike the evidence found in the Lincoln Navigator. A conviction and sentence in regard to the evidence in the Cadillac would seem to carry a greater risk of legal and factual error, even if the evidence is sufficiently safe and satisfactory.

A caveat is in order. In *Tann*, the Third Circuit restated its prior holding in *Marino* as follows: "simultaneous possession of several firearms by a convicted felon constitutes a single offense under the former 18 U.S.C. § 1202(a) absent a showing that the weapons were separately stored or acquired." *Id.* at 536-37 (footnote omitted). This restatement of its prior holding is unalloyed dicta. Although appellate court dicta is not binding, this Court has a prudential respect for such statements. In other words, although the "separately stored" principle was announced in the context of former Section 1202(a), it is possible that the Third Circuit might, in the future, apply similar reasoning in the Section 922(g)(1) context, notwithstanding the more limited holding in *Tann*. In *Tann*, the police found a gun in a bathroom from which Tann had emerged and separately found ammunition in his pockets. Thus under *Tann*, it is clear that in the Section 922(g)(1) context either: (1) the separately stored principle does not apply at all, or (2) contraband is not considered separately stored if it is in some sense in reasonable physical (or constructive) proximity. Furthermore, in *Marino*, one gun was in one room and two rifles were in a nearby closet. So again, assuming the "separately stored" principle applied in *Marino*, that principle does not put a would-be defendant at risk of multiple counts if contraband is not stored at *precisely* the same location.

At some point, however, for the "separately stored" principle to be meaningful, a given physical distance would allow for two separate counts. The Third Circuit has offered no guidance on this point. Absent clarity provided by the text of the statute, judicial line drawing becomes crucial in applying this principle. Here, in the instant litigation, all the guns were seized by the *same* group of police in the *same* operation at the *same* time at the *same* street address: 32 Smith Street, Irvington, New Jersey. One car containing drugs and a gun was in the driveway; the other car containing drugs and a gun was alongside the house. All the evidence (including the then as yet undiscovered Cadillac evidence) was seized in a *single* police operation operating from a *common* surveillance post. Functionally speaking, the contraband was not separately stored. *Cf. California v. Ciraolo*, 476 U.S. 207, 212-213 (1986) ("The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened."). Indeed, it was at that time, that is, after arresting Kennedy in the foyer of his residence, that the police asked for Kennedy consent to search the residence and the two cars; consent which he granted. Tr. 89:20-25 to 90:1-2 (July 25, 2006). Given the dearth of controlling or even persuasive case law on this point, and the ambiguity of the statutory language, it would seem that the

"separately stored" principle – if it needs to be resolved at all – should be resolved under the rule of lenity-like principles.

### 2.    Counts II and Count IV: the Section 841 counts

21 U.S.C. § 841(a)(1) provides: "it shall be unlawful for any person knowingly or intentionally -- to ... possess with intent to ... distribute ... a controlled substance." *Id*. Like the two Section 922(g) counts, Counts II and IV, the two Section 841(a)(1) counts, appear to be multiplicitous. Kennedy was convicted under Count II with possessing heroin with an intent to distribute – i.e., the heroin was found in the Lincoln Navigator. Count IV, by contrast, is the same charge, but the heroin was found in the Cadillac.

Admittedly, the statutory language here is somewhat unlike the statutory language in former Section 1202(a) and Section 922(g)(1), discussed above. Both Section 1202(a) and Section 922(g)(1) used "any" in reference to firearms and/or ammunition. Here, in Section 841(a)(1), by contrast, the statutory language prohibits a defendant from possessing with intent to distribute "*a* controlled substance." 21 U.S.C. § 841(a)(1) (emphasis added). On that basis, appellate authority has held that it is not multiplicitous to charge a defendant with a separate Section 841 count for each *different* controlled substance possessed. But "[b]y prefacing the objects of the offense with 'a,' section[] 841(a)(1) ... express[es] an *unambiguous* congressional intent to make each controlled substance a unit of prosecution." *See, e.g.*, *United States v. Vargas-Castillo*, 329 F.3d 715, 721 (9th Cir. 2003) (emphasis added). Multiple charges connected to the same controlled substance are arguably inconsistent with Congress's textually expressed intent unless the possession is in some sense substantially temporally or spatially segmented, i.e., with the different acts of possession taking on the character of different offenses. As the Sixth Circuit has explained:

> Generally, courts which have considered the issue have determined that separate convictions for possession of the same controlled substance will not violate the Double Jeopardy Clause if the possessions are *sufficiently* differentiated by time, location, or intended purpose.

> None of the legitimate bases for differentiating the [several] stashes of cocaine in this case appear to exist. The entirety of the police confrontation with Rashad occurred during the execution of the search warrant for his residence. Both quantities were located at his home and both were seized at *essentially* the same time and place.

*Rashad v. Burt*, 108 F.3d 677 (6th Cir. 1997) (discussing state and federal drug possession statutes) (emphasis added); *cf. United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978)

(holding that two Section 841(a) counts are not multiplicitous where after making a sale of some heroin, the defendant still retained other heroin for potential *future* sales); *United States v. Maldonado*, 849 F.2d 522, 524 (11th Cir. 1988) (holding that two Section 841(a) charges are not multiplicitous where each of two simultaneously held stashes of illegal drugs were located in separate counties). Here, according to the Indictment, all the heroin was possessed on or about November 9, 2004. It was all seized by the police in a *common* operation working from a *single* surveillance post; it was all seized at the *same* time (although some was discovered after the seizure itself) and at the *same* street address.

To put it another way, if a criminal were to divide a single drug stash composed of a single illegal drug into two discrete piles, and place each pile into two drawers of a common dresser, such evidence would not support two free-standing Section 841 counts. The same principle applies here. The Government responds by noting that the heroin discovered in the Cadillac was linked to the "conspiracy operated by Grullon," but that no evidence links the heroin in the Lincoln to the conspiracy. (Doc. No. 72 at 21.) What the Government failed to do was to put forward (any) evidence indicating the actual origin of the heroin in the Lincoln. Nor does the Government put forward any evidence tending to suggest that the heroin involved in the Grullon conspiracy involved but a single composition, purity, or set of stamps. Absent such evidence, there is no reason to believe that the heroin in the Lincoln had a different origin and was unrelated to the heroin in the Cadillac.

It follows that just as Counts VII and VIII are multiplicitous, then a fortiori, so are Counts II and IV. And for the same reasons, under the plain error standard, Kennedy should not be sentenced on both counts. The Court exercises its discretion: no sentence will be imposed for Count IV in regard to the evidence found in the Cadillac, and Counts II and IV are merged into Count II.

       3.       Counts III and Count V: the Section 924(c) counts

In Counts III and V, Defendant was twice charged with violating 18 U.S.C. § 924(c). Section 924(c) provides:

> any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime [receive an enhanced sentence as described in the remaining statutory language].

Both Counts III and V made use of the in "furtherance" prong of the statute. Count III of the Indictment alleged that Kennedy used a gun in furtherance of a drug crime, namely the drug crime specified in Count II of the Indictment (possession with intent to distribute). Counts II and III related to the Lincoln Navigator evidence. Count V of the Indictment alleged that Kennedy used a gun in furtherance of two drug crimes, namely the drug crime specified in Count I of the Indictment (conspiracy) and Count IV (possession with intent to distribute).[4] Counts I, IV, and V related to the Cadillac evidence. *See, e.g*., Verdict Sheet 4 ("Count 4 and Count 5 Relate to the Cadillac"); Sentencing Memorandum Letter from Joseph N. Minish (AUSA) to the Court ("Minish Letter") (June 11, 2007) (stating that the alleged conspiracy related exclusively to the evidence subsequently discovered in the Cadillac). Here too the question arises as to whether or not the two Section 924(c) counts are multiplicitous. In analyzing this question, this Court is not without authoritative pronouncements from the Third Circuit.

Kennedy argues that imposition of two Section 924(c) enhancements based on factually coterminous drug charges violates double jeopardy or mulitiplicity principles. The Government argues that Third Circuit law permits separate Section 924(c) charges where each is based on a separately charged predicate offense, even if the specified offenses relate to a single temporal criminal episode. *See* Minish Letter, *supra* (citing *United States v. Casiano*, 113 F.3d 420 (3d Cir. 1997)); *cf*. *United States v. Diaz*, 592 F.3d 467 (3d Cir. Jan. 15, 2010). It is sufficient to say, that the District Courts of this Circuit have not read circuit law in the precise way suggested by the Government. *See Austin v. United States*, Crim. No. 05-280, 2010 WL 844603, at *4 (E.D. Pa. Mar. 10, 2010) (holding that separate Section 924(c)(1) charges are permissible where each is supported by a separate robbery count, if each robbery occurred on a "separate occasion" and each was charged in a separate count); *United States v. Lowe*, Crim. No. 4-131-3, 2009 WL 2004894, at *8 (M.D. Pa. July 7, 2009) (Kane, C.J.) (holding that separate Section 924(c) counts are proper where a firearm was used "in furtherance of two separate carjackings, which involved different times, locations, victims, and vehicles," as opposed to merely involving "'co-terminous predicate offenses involving essentially the same conduct'" (quoting approvingly *United States v. Wallace*, 447 F.3d 184, 1883 (2d Cir. 2006)). However, the facts of this case do not require the Court to reach this point of law.

This Court has already held that the two Section 841(a) counts, i.e., Counts II and IV, are multiplicitous, and, therefore, has merged Count IV into Count II. Count IV is one of two

---

[4] The Court again notes that although the Indictment alleged that Counts I **and** IV were the predicate offenses to Count V, the Jury Instructions, by contrast, alleged that Count I **and/or** Count IV were the predicate offenses to Count V.

predicate offenses (the other being Count I) specified by Count V. The question then becomes if Count IV fails does Count V also fail? The jury instructions directed the jury to convict on Count V if it found that the 9 mm gun in the Cadillac was used in furtherance of either the conspiracy (Count I) "and/or" the possession with intent to distribute heroin charge (Count IV). To the extent that any one or more jurors voted to convict on Count V because he or she or they found the gun was used (exclusively) in furtherance of Count IV (but not Count I), then a conviction so secured would be entirely multiplicitous with the other Section 924(c) count (Count III). In this situation, both Counts III and Count V would be separate Section 924(c) counts based upon an identical underlying charge (because Counts II and IV have been merged).

To be clear, the question here is not one of unanimity. (Unanimity is addressed in the next section of this opinion.) For the purpose of this section of this opinion, the Court assumes that all jurors were unanimous in regard to the gun's being used in furtherance of (at least) one of the two predicate crimes. But if any juror or jurors or the entire jury voted to convict on Count V because he or she or they believed that Kennedy used the gun in furtherance of Count IV (exclusively), then each and every such juror had already voted to convict Kennedy on identical grounds under Count III (using a gun in furtherance of the crime of possession with intent to distribute heroin). In *Diaz*, the Third Circuit held that if there is only one predicate crime, then only one Section 924(c) may be brought – irrespective of how many guns were used in the course of the single predicate crime. *Diaz*, 592 F.3d at 471 (citing *United States v. Lindsay*, 985 F.2d 666, 676 (2d Cir. 1993)). If the jury instructions had read "and" rather than "and/or," this Court would apply the harmless error rule. In that situation, Count V could be supported by Count I as its predicate crime, just as Count III could be supported by Count II. It might be argued that the Count V withstands scrutiny because the jury also separately and unanimously convicted on Count I, the remaining predicate crime. However, just because the jurors believed that Kennedy was guilty in regard to Count I does not mean each and every juror believed Kennedy used a gun in "furtherance of" Count I. It is, after all, this in "furtherance of" element which distinguishes Count V from the underlying conspiracy count. The Court concludes that Count V's instruction which relied on Count IV, which has been merged into Count II, is error. The instruction's use of Count I and "and/or" does not undo that error.

The jury instruction errs. But is it plain error which affected Defendant's substantial rights? Leaving aside Count I, the conspiracy count, Counts V and III are clearly multiplicitous: each seeks a Section 924(c) enhancement based on a single offense, Counts IV and II, which have been merged into a single count on multiplicity grounds. This is exactly what the Third Circuit already precluded in *Casiano* and subsequently clarified in *Diaz*. The error was plain when the instruction was given. Nor does the fact that Count V has an additional predicate offense (that is, Count I – the conspiracy count) cure the error. The

-11-

jury instructions used an "and/or;" therefore the jury's verdict, as embodied on the verdict sheet,[5] cannot establish that even one juror voted to convict on Count V in reliance on Count I as the predicate offense. For the same reason that multiplicity in regard to Counts II and IV was plain and prejudiced Kennedy's substantial rights, the error here too was plain, and it, too, prejudiced Kennedy's substantial rights in regard to Counts III and V. Indeed, Kennedy was more prejudiced in regard to Counts III and V than he was in regard to Counts II and IV. In the latter situation, that is, in regard to Counts II and IV, if sentences had been imposed for both counts, each sentence would run concurrently and the harm to Defendant would largely be tied to collateral consequences flowing from an extra conviction and an additional special assessment. On the other hand, error in regard to imposing a second multiplicitous Section 924(c) count (i.e., Counts III and V) would lead to the imposition of an draconian[6] 300 month sentence running consecutive to all other sentences. Finally, as to

---

[5] Interestingly, the Verdict Sheet itself had conflicting language. Atop Count V was an instruction stating: "Consider Count 5 only if you have already found defendant guilty under **either** Count 1 **or** Count 4. Verdict Sheet 5 (bold added, emphasis omitted). Within Count V, the Verdict Sheet stated: "With respect to Count 5, which charges the defendant with knowingly and willfully possessing a firearm, namely a ... []9 millimeter caliber handgun ... in furtherance of a drug trafficking crime for which he may be prosecuted ... that is, conspiracy **and** possession with intent to distribute heroin as charged in Count 4 ...." *Id*. (bold added). These conflicting instructions within the Verdict Sheet (which also depart from the Jury Instructions (using "**and/or**") and the Indictment (using "**and**")) must have substantially added to the potential for jury confusion. (To be clear, the Court is not suggesting that the prosecutor's office erred by using "and" in the Indictment.)

[6] In this Court's view a 300 month sentence on these facts or on facts likes these is draconian. This Court is aware that the Supreme Court of the United States has held that under 18 U.S.C. § 924(c)(1) "conviction" means "the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction," and that a "second or subsequent conviction," per Section 924(c)(1), can occur in a single trial proceeding on a single indictment. *Deal v. United States*, 508 U.S. 129, 131-32 (1993). In the fulness of time, Congress or the Court may reconsider this result, as they have had on other issues, and they may choose to impose this 25 year mandatory increase in punishment *only* where a defendant is first indicted, tried, and convicted on a first-in-time Section 924(c) charge, and then, after having been put on meaningful notice, goes out and commits another temporally distinct Section 924(c) offense. It may be that extant appellate law on this point is consistent with the intent of Congress' professional legislative draftsmen, but this Court finds it difficult to believe that the largest number of members of Congress who voted for this bill intended a defendant, arrested for the first time on two unrelated low-level drug crimes and possessing a separate gun in relation to each separate drug crime, must spend (what is effectively) the

whether the Court should grant discretionary relief, i.e., whether the error seriously affected the "fairness, integrity, or public reputation of judicial proceedings," the answer must be "yes." The imposition of an additional twenty-five year sentence based on a flawed jury instruction goes directly to the integrity of the proceedings.

## B.    Unanimity

The Jury Trial Clause of the Sixth Amendment of the Constitution of the United States provides: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ...." U.S. CONST. amend. VI; *see also* U.S. CONST. art. III, § 2 ("The Trial of all Crimes ... shall be by Jury.'). The Supreme Court has explained that "[u]nanimity in jury verdicts is required where the Sixth and Seventh Amendments apply." *Andres v. United States*, 333 U.S. 740, 748 (1948). Indeed, "unanimity is one of the *indispensable* features of federal jury trial." *Johnson v. Louisiana*, 406 U.S. 366, 370 (1972) (Powell, J., concurring) (emphasis added). "This view is based on the long and unbroken line of federal cases viewing the requirement of unanimity as an *essential* element of the criminal jury trial as established in the federal system." *United States v. Scalzitti*, 578 F.2d 507, 511 (3d Cir. 1978) (Seitz, C.J.) (emphasis added). Indeed, the requirement for a unanimous verdict is not subject to waiver. *Id*. at 512.

An almost equally long line of controlling appellate case law has explained that jury unanimity concerns are at issue, not just where jurors fail to unanimously acquit or convict, but where the jury instructions are so ambiguous that it is impossible to meaningfully determine what precisely the jurors have agreed to. *See, e.g.*, *Schad v. Arizona*, 501 U.S. 624, 631-632 (plurality opinion); *Andersen v. United States*, 170 U.S. 481 (1898); *United States v. Russell*, 134 F.3d 171, 181 (3d Cir. 1998) ("However, it is impossible to conclude beyond a reasonable doubt that the jury reached unanimous agreement as to which specific [predicate] violations occurred. Therefore, we must conclude that Russell was deprived of his *Sixth Amendment right to a unanimous jury verdict*." (emphasis added)). This question

rest of his or her adult working life in jail – *if only in consideration to the loss imposed upon the tax paying public.* It appears that this Court is not alone in this view. *See United States v. Lowe*, Crim. No. 4-131-3, 2009 WL 2004894, at *8 (M.D. Pa. July 7, 2009) (Kane, C.J.) (holding that separate Section 924(c) counts are proper where a firearm was used "in furtherance of two separate carjackings, which involved different times, locations, victims, and vehicles," as opposed to merely involving "co-terminous predicate offenses involving essentially the same conduct" (quotation marks omitted)).

of whether the jury reached a unanimous verdict will naturally come up anytime a jury instruction makes use of "or" or, as here, "and/or." At that point, absent a specific unanimity instruction in regard to the ambiguous element within the instruction, the Court must decide if the jury reached a unanimous judgment in regard to something to which unanimity is required. The use of an "or" or "and/or" is not per se error. Whether it is error or not depends on Congress' intent in regard to the particular statute in dispute. *Cf., e.g.*, *Schad*, 501 U.S. at 651 (Scalia, J., concurring) ("We would not permit ... an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday ....").

For example, in *Richardson v. United States*, 526 U.S. 813 (1999), the Supreme Court adjudicated the unanimity issue in regard to the federal Continuing Criminal Enterprise ("CCE") Statute. *See* 21 U.S.C. § 848(a). That statute forbids any "person" from "engag[ing] in a continuing criminal enterprise." *Id*. It defines "continuing criminal enterprise" as involving a "violat[ion]" of the drug statutes where "such violation is a part of a continuing series of violations." Section 848(c). Thus the Supreme Court had to decide whether a jury had to agree unanimously about which specific violations make up the "continuing series of violations" or whether it was enough for each juror to decide that the defendant engaged in such a series of violations absent unanimity as to which underlying drug violations made up the series. The Supreme Court held:

> we must decide whether the statute's phrase "series of violations" refers to one element, namely a "series," in respect to which the "violations" constitute the underlying brute facts or means [which do not require unanimity], or whether those words create several elements, namely the several "violations," in respect to each of which the jury must agree unanimously and separately. Our decision will make a difference where, as here, the Government introduces evidence that the defendant has committed more underlying drug crimes than legally necessary to make up a "series." (We assume, but do not decide, that the necessary number is three, the number used in this case.) If the statute creates a single element, a "series," in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three. On the other hand, if the statute makes each "violation" a separate element, then the jury must agree unanimously about which three crimes the defendant committed.

*Richardson*, 526 U.S. at 817-18. In order to answer that question, the Supreme Court turned to the text of the statute.

[T]he statute does not explicitly tell us whether the individual violation is an

-14-

element or a means. But the language is not totally neutral. The words "violates" and "violations" are words that have a legal ring. A "violation" is not simply an act or conduct; it is an act or conduct that is contrary to law. BLACK'S LAW DICTIONARY 1570 (6th ed. 1990). That circumstance is significant because the criminal law ordinarily entrusts a jury with determining whether alleged conduct "violates" the law ... and, as noted above, a federal criminal jury must act unanimously when doing so.

*Id*. at 818. The Supreme Court concluded that: "a jury in a federal criminal case brought under § 848 must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'" *Id*. at 815. In other words, each violation was an element, rather than a means, and as such the jury had to be unanimous.

Section 924(c), the statute at issue here, is structurally similar to the CCE statute at issue in *Richardson*. Where the CCE Statute spoke to "violations," Section 924(c) makes use of predicate "crime[s]." If the "violations" of the CCE Statute are elements, it would seem to follow that the "crimes" within Section 924(c) are also elements demanding unanimity. *See* United States v. Gomez, 580 F.3d 94, 103 (2d Cir. 2009) ("The failure [in the Section 924(c) context] to instruct the jury that it had to agree on a specific predicate was likely error." (citing Richardson v. United States, 526 U.S. at 818)); *cf.* United States v. Russell, 134 F.3d 171 (3d Cir. 1998).

As already explained, the Jury Instructions for Count V made use of two separate predicate crimes: Count I "and/or" Count IV. This is legal error. The next question is whether this Court should review the error for harmlessness or under the plain error standard. There is some reason to apply the harmless error standard here. When a plaintiff fails to make a timely objection, he loses the right to have error reviewed under the harmless error standard, and proceedings are instead reviewed under the plain error standard. *Cf.* Alexander v. Riga, 208 F.3d 419, 426 (3d Cir. 2000) ("Generally, a party who does not clearly and specifically object to a charge he believes to be erroneous waives the issue on appeal.... If the party claiming error in the jury instructions did not make a timely objection, we review for plain error ....").

However, in the context of jury unanimity, the Third Circuit has held that a criminal defendant cannot waive his right in this regard. Scalzitti, 578 F.2d at 511. In *Scalzitti*, the Third Circuit granted a new trial notwithstanding intentional waiver of the unanimity right

-15-

by the defendant. It apparently applied the harmless error standard.[7] There is no hint that the Third Circuit applied the more demanding plain error standard, notwithstanding the intentional waiver of the unanimity right by the defendant in *Scalzitti*. In the instant litigation, Defendant Kennedy did not intentionally waive his unanimity right in regard to the instruction on Count V. Kennedy's attorney merely failed to object the Government's proposed instruction. It would therefore seem to follow that the harmless error standard applies. In other words, "the Government must prove beyond a reasonable doubt that the defendant was uninjured by the error ..., [i.e., that] there [was] 'no reasonable possibility' of prejudice." *United States v. Toliver*, 330 F.3d 607, 613-15 (3d Cir. 2003) (quoting *United States v. Alessandrello*, 637 F.2d 131, 139 (3d Cir. 1980)); *United States v. Beros*, 833 F.2d 455, 463 (3d Cir. 1987) ("Because there is a significant possibility that this error may have resulted in a non-unanimous verdict in violation of the [S]ixth [A]mendment, the district court's instructions were not harmless beyond a reasonable doubt.").

To summarize, the "in furtherance of" requirement is an element of Count V, a Section 924(c) count. Count V made use of two predicate crimes: Count I and Count IV. Because there was no specific instruction in regard to unanimity of the predicate counts, the Court has no way to tell if all jurors agreed after deliberation that the gun was used "in furtherance" of Count I, or, alternatively, if all jurors agreed after deliberation that the gun was used "in furtherance of" Count IV. Given that the jury instructions made use of the phrase "and/or," it is possible, if not likely, that some jurors thought the gun was used "in furtherance" of Count I and other jurors thought the gun was used "in furtherance of" Count IV. The Court would have to be soothsayer to conclude that each member of the jury determined (after deliberation) that the gun was used in furtherance of any one predicate count, much less both. Moreover, the fact that the jury convicted on Counts I and IV, standing alone, does not, without more, establish that the jury also believed that the gun was used "in furtherance of" either of those counts. To hold otherwise would be to collapse the jury's finding in regard to possession (Count IV) or conspiracy (Count I) into a Section 924 conviction in every case. Such a result is not the law.[8]

_____

[7] Alternatively, the Third Circuit may have found "structural error" in *Scalzitti*. Structural error so infects the proceedings that it defies the harmlessness standard and reversal is automatic. *See* Arizona v. Fulminante, 499 U.S. 279, 310 (1991).

[8] In *Gomez*, the Second Circuit held that although the *Richardson* analysis applies to each predicate crime in the context of Section 924(c), where the jury separately convicts a defendant for each predicate count in other counts, the lack of a specific unanimity instruction in the Section 924(c) count is harmless. This Second Circuit's holding on this point is curious. The fact that the a jury may unanimously convict on each predicate count does not without more mean that when those underlying counts are incorporated into a free-

In the alternative, even if the plain error standard of review applies, the jury instructions were in error. Plain error review may apply because Kennedy failed to make any timely objection to the Jury Instructions in regard to Count V. The absence of a specific unanimity instruction in this case constitutes error under *Richardson*. It is also plain error because *Richardson* predates the trial and its applicability is obvious to the case at hand. *Olano*, 507 U.S. at 731; *cf. United States v. Dobson*, 419 F.3d 231, 240 (3d Cir. 2005) ("[W]e have noted that, although it is not a per se rule, 'the omission of an essential element of an offense [in a jury instruction] *ordinarily* constitutes plain error.'" (quoting *United States v. Haywood*, 363 F.3d 200, 207 (3d Cir. 2004) (quotation marks omitted)). Did the lack of a specific unanimity instruction prejudice Kennedy's substantial rights? The Sixth Amendment right at issue here is a substantial constitutional right and there is a "reasonable likelihood" that the jury failed to apply the correct legal standard given the incorrectly stated jury instruction. *Gov't of V.I. v. Rosa*, 399 F.3d 283, 295 (3d Cir. 2005); *see also Dobson*, 419 F.3d at 240 (finding that the "reasonable likelihood" standard is satisfied where it is "possible for the jury to have convicted [the defendant] without finding beyond a reasonable doubt" as to an element of the offense). The Court finds that Kennedy has met his burden. *See Russell*, 134 F.3d at 181 ("[T]he error did affect a substantial right of Mr. Russell – his constitutional right to a unanimous jury verdict on each element of the [continuing criminal enterprise] charge."). The final element of the plain error test is to inquire whether the outcome can be said to have affected the "fairness, integrity, or public reputation of the judicial proceedings." *Olano*, 507 U.S. at 732. In *Dobson*, the Third Circuit held that "a conviction based on an incomplete charge taints the reputation of the judicial process" and therefore "vacate[d] [defendant's] conviction [under the plain error standard]." *Dobson*, 419 F.3d at 241. *Dobson* appears to be on-point.

For all the reasons elaborated above, this Court vacates Counts V. No sentence will be imposed.

## V.   CONCLUSION[9]

---

standing Section 924(c) count that the jury also found that *any* gun was knowingly possessed in furtherance of *any* of the underlying counts, much less that the that the jury *unanimously* agreed that any gun was knowingly possessed in furtherance of any *specific* predicate count. *But see Gomez*, 580 F.3d at 103-04. Moreover, this case is distinguishable from *Gomez*. In this case, Count IV, one of the two predicate counts, has been merged into Count II: it makes no sense to suggest that the jury in this case convicted on each of the predicate counts.

[9] Finding no substantial basis in law, the Court **DENIES** granting Kennedy relief under the Cruel and Unusual Punishment Clause of the Eighth Amendment.

For the reasons elaborated above, Counts **VII** and **VIII** are merged into Count **VII**; Counts **II** and **IV** are merged into Count **II**; Count **V** is vacated, and sentencing, probation, supervised release, fine, restitution, special assessments, etc. will be specified in a separate order.

Kennedy's motions to stay resentencing pending a Section 2255 hearing is **DENIED**. *See Kapral v. United States*, 166 F.3d 565, 569-70 (3d Cir. 1999). Kennedy's motion for the appointment of counsel for his Section 2255 motion is **DENIED** as premature.


                                            s/ William J. Martini

**DATE: December 22, 2010**                     **William J. Martini, U.S.D.J.**